# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| TATIANA SHARONOVA, | ) | |
| | ) | No. 15 C 5668 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Sidney I. Schenkier |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of the U.S. Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff Tatiana Sharonova ("plaintiff" or "Ms. Sharonova") has filed a motion for summary judgment seeking reversal or remand of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") (doc. # 17: Pl.'s Mot. for Sum. J.). The Commissioner has filed her own motion seeking affirmance of the decision denying benefits (doc. # 24: Def.'s Mot. for Sum. J.). For the following reasons, Ms. Sharonova's motion for remand is granted and the Commissioner's motion is denied.

### I.

On November 28, 2011, Plaintiff filed a claim for DIB, claiming that she became disabled on August 15, 2010 because of depression, migraine headaches, anxiety, and insomnia (R. 143, 163). Her claim was denied initially on February 23, 2012 and on appeal on July 9, 2012 (R. 79-80). Ms. Sharonova, represented by counsel, participated in a hearing before an Administrative Law Judge ("ALJ") on July 11, 2013; a medical expert ("ME") and vocational

---

[1]On July 23, 2015, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (doc. # 10).

expert ("VE") also testified (R. 29). On February 28, 2014, ALJ Sylke Merchan issued an opinion finding that plaintiff was not disabled (R. 12-23). The Appeals Council upheld the ALJ's determination, making it the final opinion of the Commission (R. 1-3). *See* 20 C.F.R. § 404.981; *Shauger v. Astrue*, 675 F.3d 690, 695 (7th Cir. 2012).

## II.

Ms. Sharonova was born on August 28, 1956; she was almost 54 years old on her alleged disability onset date (R. 143). Her date last insured is December 31, 2014 (R. 79), and so to be eligible for benefits, she must demonstrate that she became disabled prior to that date. *Pepper v. Colvin,* 712 F.3d 351, 369 (7th Cir. 2013). The medical record is voluminous, representing extensive visits by plaintiff to a number of doctors for treatment of headaches, depression, and back pain.

In her opinion, the ALJ followed the familiar five-step process for determining disability, 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a). She found that Ms. Sharonova's severe impairments were major depressive disorder, anxiety, and migraine headaches, but that none of these impairments, alone or in combination, met or medically equaled the severity of a listed impairment (R. 14, 15). The ALJ set Ms. Sharonova's residual functional capacity ("RFC") as the ability to perform "a full range of work at all exertional levels, but with the non-exertional limitations to avoid concentrated exposure to noise and vibrations; only simple, routine, repetitive tasks; no fast-paced production requirements; only simple work-related decision making; few if any changes in work setting; no public contact; and only occasional contact with supervisors and co-workers (R. 17). At Step Four, the ALJ found that Ms. Sharonova was unable to perform her past relevant work because her past work as a real estate agent was semi-skilled and plaintiff's current RFC was for unskilled work. At Step Five, the ALJ found that Ms.

Sharonova was closely approaching advanced age but that she was not disabled according to the Medical-Vocational Rules ("the Grid"), regardless of whether or not she had transferable skills. 20 C.F.R. Part 404, Subpart P, Appendix 2 (R. 22). Given this analysis, there were a significant number of jobs in the national economy that plaintiff could perform (*Id.*).

"We will review the ALJ's decision deferentially, and will affirm if it is supported by substantial evidence." *Decker v. Colvin*, No. 13 C 1732, 2014 WL 6612886 at *9 (N.D. Ill. Nov. 18, 2014). Substantial evidence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Alevras v. Colvin*, No. 13 C 8409, 2015 WL 2149480 at *4 (N.D. Ill. May 6, 2015) (*Schenkier, J.*). The court will not reweigh evidence or substitute its own judgment for that of the ALJ. *Decker*, 2014 WL 6612886 at *9. In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Id.*, *quoting Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Plaintiff alleges that the ALJ made five errors in finding that she is not disabled. She contends the ALJ: (1) failed to properly weigh the opinion of her treating psychologist; (2) selectively cited evidence to support her conclusions regarding plaintiff's migraine headaches; (3) failed to explain how plaintiff's physical impairments resulted in no work-related limitations; (4) erred in finding that there are a significant number of jobs plaintiff can perform; and (5) failed to resolve a conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT") (Pl. Mot. for Sum. J. at 1). We find that the ALJ erred by inadequately supporting her decision to give little weight to the medical opinion of Ms. Sharonova's treating psychologist, Olga Green, Psy.D, that Ms. Sharonova's mental impairments prevented her from engaging in full-time work (R. 20). On that basis, we grant plaintiff's motion.

**A.**

An ALJ must give controlling weight to a treating physician's opinion if the opinion is both supported by "medically acceptable clinical and laboratory diagnostic techniques," and is "not inconsistent" with substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). When an ALJ decides to give a treating physician less than controlling weight, he or she must consider six criteria in deciding how much weight to afford a medical opinion: (1) the nature and duration of the examining relationship, (2) the length and extent of the treatment relationship, (3) the extent to which medical evidence supports the opinion, (4) the degree to which the opinion is consistent with the entire record, (5) the doctor's specialization, if applicable, and (6) other factors which validate or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(d)(6). If the ALJ decides not to give controlling weight to a treater's opinion, he or she must use these factors to minimally articulate sound reasons for that decision. *Schmidt v. Astrue,* 496 F.3d 833, 842 (7th Cir. 2007), 20 C.F.R. § 404.1527(c).

The parties do not dispute that Dr. Green was plaintiff's treating psychologist. Plaintiff met with Dr. Green one to two times per week for therapy sessions to treat her depression beginning in February 2011 and continuing at least until the hearing in July 2013 (R. 309, 51). In addition to seeing Ms. Sharonova for individual therapy, Dr. Green administered a Wechsler Adult Intelligence Scale ("WISC-IV") and a Minnesota Multiphasic Personality Inventory ("MMPI-2") test on Ms. Sharonova over the course of several days in September and October 2011; Dr. Green also completed a psychiatric report for the Department of Disability Services on February 15, 2012 ("DDS Report") and a Mental Impairment Questionnaire and RFC on June 21, 2013 ("Mental RFC") (R. 309-15, 453-55). In the DDS Report, Dr. Green opined that Ms. Sharonova's depression would cause her to be unable to concentrate at work, result in frequent

crying spells, and make her unable to handle even the slightest stressors (R. 309). She would also have serious limitations on her ability to initiate, sustain or complete tasks, and would tend to become overwhelmed (R. 311). In the Mental RFC, Dr. Green opined, via check boxes, that Ms. Sharonova had "poor/none" mental ability to perform fifteen out of sixteen tasks associated with unskilled work,[2] and wrote that she was "unable to manage stress appropriately, unable to sustain attention and concentration, [and suffered from] fatigue and easy distractibility" (R. 454).

As an initial matter, we note that after deciding not to give Dr. Green's opinion controlling weight, the ALJ did not apply the Section 404.1527 factors when analyzing what weight to give it; this deficiency alone warrants remand. *Scott v. Astrue,* 647 F.3d 734, 740 (7th Cir. 2011). This is particularly the case here, where an analysis of the factors would have likely weighed in favor of giving at least some credit to Dr. Green's opinion: she was a mental health specialist, she treated plaintiff regularly – and frequently – over the course of several years, and she saw plaintiff both in a therapeutic setting and also to administer and then analyze psychological tests. *Id.*

The ALJ justified her decision to give Dr. Green's opinion little weight on the ground that it was inconsistent with her own records and with the ME's opinion. *First,* the ALJ found Dr. Green's opinion in the Mental RFC that Ms. Sharonova could not perform fifteen out of sixteen unskilled tasks, and was thus effectively unable to hold a job, to be inconsistent with Dr. Green's own medical records. Specifically, the ALJ mentions "records" that indicate "relevant

---

[2] These abilities are: remember work-like procedures, understand and remember short and simple instructions, maintain attention for a two-hour time segment, maintain regular attendance, sustain an ordinary work routine, work in coordination with others without being unduly distracted, make simple, work-related decisions, complete a normal workday and work week without interruptions from psychological symptoms, perform at a consistent pace without unreasonable rest periods, as simple questions and request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers, respond appropriately to changes in a routine work setting, deal with normal work stress, and be aware of normal hazards and take appropriate precautions (R. 454).

speech, logical thought process, no delusions, and no preoccupied thought" (R. 20). *Second,* the ALJ noted that Dr. Green repeatedly assessed Ms. Sharonova as having a GAF score of 50-55, which the ALJ stated indicates only moderate impairments.[3] *Third*, the ALJ found that Dr. Green's opinion was inconsistent with the testimony provided by the ME.

We find that the ALJ has failed to adequately support her determination that Dr. Green's opinions were inconsistent with other evidence. While the ALJ states that Dr. Green's "own medical records" are allegedly inconsistent with the Mental RFC Report, because they describe "relevant speech, logical thought process, no delusions, and no preoccupied thought," all of these assessments appear in the DDS Report that Dr. Green completed sixteen months prior to the Mental RFC. To the extent that there was any inconsistency (which we address below), the ALJ's opinion fails to reflect any consideration of whether the records instead indicate a worsening of plaintiff's condition over time.

Not only did the ALJ err by implying that she relied on a number of Dr. Green's records – instead of just one – to demonstrate inconsistency, the ALJ also impermissibly cherry-picked that sole piece of evidence to support both her conclusion that Dr. Green's opinion was inconsistent, and that the medical evidence showed that claimant was actually capable of working. *Yurt v. Colvin,* 758 F.3d 850, 860 (7th Cir. 2014) (ALJ's reliance on claimant's highest GAF score as evidence of ability to work was error where ALJ ignored evidence favorable to claimant's case). The ALJ picked out a single set of check-boxes from the DDS Report to

---

[3] The Global Assessment of Functioning ("GAF") is a system used to score the severity of psychiatric illness. http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3036670/ (last visited on September 14, 2016). A score of 50 is at the high end of having serious symptoms or serious impairment in social or occupational functioning, and a score of 55 places an individual in the middle of having moderate impairments in social or occupational functioning. http://www.albany.edu/counseling_center/docs/GAF.pdf (last visited on September 14, 2016). We note that the fifth edition of the DSM, published in 2013, has abandoned the GAF scale because of "its conceptual lack of clarity ... and questionable psychometrics in routine practice." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed.2013). *See Williams v. Colvin,* 757 F.3d 610, 613 (7th Cir. 2014) (recognizing the discontinuation of use of the GAF scale after 2012).

support her conclusion that Dr. Green's opinion was inconsistent with her later Mental RFC report. In doing so, the ALJ ignored both the remainder of the DDS Report as well as numerous other treatment records by Dr. Green that also document Ms. Sharonova's impairments.

Elsewhere in the DDS Report, Dr. Green provides a more detailed explanation of Ms. Sharonova's inability to work, noting that she would be unable to concentrate, unable to handle even minor stress, would engage in frequent crying spells, had no energy, and had serious limitations on her ability to carry out and remember instructions because of depression, anxiety, and fatigue caused by insomnia. While the Mental RFC sixteen months later arguably reports more severe limitations from psychological impairments than those described in the DDS Report, the assessments in the two documents are not inconsistent; they both describe Ms. Sharonova's difficulties resulting from stress, anxiety, depression and insomnia.[4]

The ALJ does not mention Dr. Green's treatment notes from 2013, which consistently document that Ms. Sharonova was experiencing feelings of hopelessness, was isolating herself, was fatigued, had trouble managing all aspects of her daily life because of her depression, regularly cried throughout her entire therapy session, and suffered from panic attacks at random times (R. 590, 594, 606, 618, 626, 632, 642, 644, 646). The only part of these records that the ALJ acknowledges is in her comment that Dr. Green "repeatedly assessed GAF scores of 50-55, which indicate only moderate limitations" (R. 20). Not only does the ALJ's reliance solely on the GAF scores constitute impermissible cherry picking, but, as we note above, to the extent that a

---

[4] We also find that the DDS Report is not internally inconsistent merely because Dr. Green opines both that Ms. Sharonova had no delusions, logical thought processes and relevant speech, and yet was unable to work because of an inability to concentrate and handle stress. At the least, the ALJ's focus solely on the evidence that Ms. Sharonova had some normal mental functions was impermissible cherry picking. But we are not even convinced that the failure of a doctor to find a person severely impaired in every respect invariably meant that the person has ability to hold a full time job. *Campbell v. Astrue,* 627 F.3d 299, 307 (7th Cir. 2010) (ALJ erred in relying only on part of doctor's report that noted normal mental status, while ignoring sections that indicated greater mental limitations).

claimant's GAF score is even an accurate gauge of his or her ability to work, a score of 50 indicates the high end of serious, not moderate, mental health symptoms.

The ALJ also erred in her explanation of why she gave great weight to the opinion of the ME who testified at the hearing. The ALJ explained that the ME not only had the opportunity to observe Ms. Sharonova and hear her testimony, but also that he had reviewed "the entirety of the record" (R. 21). This statement is incorrect; the medical expert noted at the hearing that the record lacked more than 100 treatment notes from Dr. Green's therapy sessions with the claimant. The ALJ herself mentions that the ME identified that Dr. Green's notes were missing, and the ALJ stated during the hearing that she would keep the record open to receive Dr. Green's treatment notes. In fact, at least some of those treatment notes were later produced; the last exhibit in the medical record is a full year's worth of Dr. Green's notes from 2013, which we have no evidence the ME ever saw.[5] We know that the ALJ saw them, however, because she refers to the GAF score Dr. Green included in each one. The ALJ's conclusion that Dr. Green's opinion is inconsistent with the ME's opinion is not adequately supported, given that the medical expert did not even have any of Dr. Green's treatment notes to review.[6] Therefore, we remand the case so that the ALJ can consider in greater depth whether Dr. Green's opinion is entitled to more than "little" weight.

---

[5] We do know whether the medical expert erroneously failed to review records given to him or whether these records were added to the medical record after the expert's review; Dr. Green's treatment notes are the final exhibit in the record, comprising 62 pages. At the hearing, the medical expert listed the exhibits he reviewed and the exhibit comprising Dr. Green's notes was not among them.

[6] The ALJ also gives great weight to the medical expert because he opined that the WISC-IV and MMPI-2 tests Dr. Green administered in October 2011 were invalid, and thus did not support Dr. Green's later opinions of Ms. Sharonova's mental health limitations. But Dr. Green's own analysis of the two tests also notes some of the same reasons for their possible invalidity (R. 313). The ALJ does not recognize Dr. Green's analysis of the test results, and thus we find that her determination that Dr. Green's later opinions were inconsistent with these tests is not supported by any evidence.

**B.**

Because we find that the ALJ's deficient treatment of Dr. Green's opinion is sufficient to warrant remand, we need not discuss plaintiff's remaining arguments. However, on remand, the ALJ should fully consider all relevant evidence, including the question of whether Dr. Simkin may be considered a treating doctor; neither case law nor the regulations have set forth a hard and fast rule about how many times a claimant must see a doctor before a treatment relationship is established. *See, Chavez v. Colvin,* No. 13 C 663, 2014 WL 3375011 (N.D. Ill. July 8, 2014) (*Schenkier, J.*).

## CONCLUSION

For the foregoing reasons, we grant Plaintiff's motion for summary judgment (doc. # 17) and deny the Commissioner's motion to affirm the denial of benefits (doc. # 24). This case is remanded to the ALJ for further proceedings consistent with this opinion.

**ENTER:**


**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**


**DATED:  September 22, 2016**

9